Your Honor, this case is brought to you by Mr. and Mrs. Mikenas v. Village of Westmont. I'm pleased to inform you that this case is a matter of public interest. The defendant, the children of Westmont, the defendants' athletes, are going on behalf of the defendant's accounts. Mr. Kevin J. Moore, are going on behalf of the defendants' athletes. Mr. John R. Sagan. Can we get the door closed? Mr. Marshall, would you close the back door, please? All right, thank you. Mr. Moore, on behalf of the appellant, you may proceed. May it please the Court, my name is Kevin Moore. I am here on behalf of Robert Mikenas and his sister, Carol Giarella. They are the successor trustees and beneficiaries, respectively, of a trust created by their father, which passed on to them a tract of land in Westmont. In 2010 and 2011, the village undertook improvements on that tract of land in front of it because the tract across the street from them, 25 East 56th Place, wanted to go ahead with the development that they had, or he received approval. Let me ask you a special question. One of the issues you have raised, of course, is whether or not this recapture agreement was some type of a unilateral, unenforceable contract because the homeowners apparently were not signatories to the agreement, didn't receive notice. But the question I have is, doesn't the village, as a home rule municipality, have the authority to impose these recapture fees without the consent of the homeowner? Yes, in a proper recapture agreement, they would have that consent. As a matter of fact, in one of the cases signed by the village of Westmont, that principle was set out, which is when you do have a proper recapture agreement, which typically is with the municipality and the developer of some adjacent property, there is no need to have the other property owner, the adjacent property owner, on notice. But we don't have that here. We don't have a recapture agreement, so they can't fall back on that. Well, you don't have a developer. There's no developer. There was, but the only party is the municipality. In the recapture agreement that they're trying to impose on us, yes. But there was a developer there, which was American Charter Bank. Which they went bankrupt. Well, the earlier developer, which is a man's name that has no relevance here, did go bankrupt. They defaulted. And so American Charter Bank took over the property through that default, and the bank decided to go ahead with the development that the earlier man had submitted to the village and obtained the approval of the village. But there was a developer there to do it, which was American Charter Bank. Westmont, on its own, decided to do the improvements themselves or itself. And that brings us, getting ahead a little bit, into the violation of their own land development ordinances, which states that the developer must pay for the improvements in its entirety. And then they had the opportunity to enter into a recapture agreement with the village to recapture the proportion of the village. What is the statute of limitations you are arguing applies here, in your opinion? Ten years. Ten years, okay. But. Ten years because it was a contract? Because it was a contract. It was a contract action. It's impositioned somewhat inconsistently, I'm trying to grasp that, because I believe part of your argument is, look, there was never a legitimate recapture agreement here at all. So if there isn't a legitimate recapture agreement, and it's not enforceable at all, it's void, then how can you fall under the written 10-year agreement that applies to written contracts? Because the lawsuit deal was filed. I understand the. . . It seems to be somewhat inconsistent there. I understand that. But the answer to that is the lawsuit that was filed was a contract action. We were seeking to have the court recognize that this contract, which is the sole basis of this lien, was invalid. And that, I would suggest, brings it within the 10-year limitations period for contracts. You do argue in the alternative. Yes. And actually even, I think, considerably stronger response to this is that this cause of action hadn't even accrued at the time. Well, that's not the right way to say that. The action hadn't even accrued because under the Sundance-Holmes decision, the Illinois Supreme Court opinion, the court looked for the first time on when a cause of action on impact fees accrued. And it drew analogies to a number of different tax cases and came to the conclusion that a case-based challenging impact fee accrues when the fee is paid or is to be paid. But what statute did Raintree apply? Didn't it apply to Fiverr? Fiverr, but the accrual issue was not before it. And Raintree did not have the accrual issue. The only case on point, the lone case on point, is Sundance-Holmes. And the trial court judge rejected that out of hand, simply saying, you are trying to convince me that it hasn't accrued, drawing analogies to tax cases, and I just don't buy it. Yeah, but in Sundance, the fees had already been paid prior to the ordinance being declared unconstitutional. Isn't that what happened there? Yes. That's different here. Nothing's been paid. That's true, which means that a challenge to the amount of fees has not yet accrued, but we do have standing to bring this action under the declaratory judgment act because there is a controversial issue here. This lien and the ordinance that creates the lien and the lien itself creates considerable hardship to my clients. I think you have standing that that isn't the issue. As I read the facts and made some notes and went through it, given when it was filed, the complaint was passed, or the ordinance was passed on March 21, 2011. The recapture agreement was recorded on May 11, 2011, and the complaint wasn't filed until March 24, 2017. So if, in fact, the five-year statute of limitations applies, and we haven't made decisions on that yet, the complaint would have been filed outside the five years, correct? Yes. And if you find also that the claim had accrued, so to start that limitations period, and that to me is the bigger point on this issue, the accrual. I've looked to find some case where somebody was challenging the validity of a contract and have the limitations be an issue in that case, and I simply didn't find one. But this isn't really a contract, is it? Isn't this unilateral on the part of the village? Yes, absolutely. Well, which is it? Well, I think that trying to validate a contract could be seen as a contract action. I'll quickly move away from that to say that if you're comfortable so as well, then we have the accrual issue. In the accrual issue, we have one opinion in the State of Illinois on point, and that is Sundance Home. Other cases since have followed it in passing. They said, you know, Sundance Home, they said that the cause of action accrues when the fees are to be paid. But that to me is the stronger point on the limitations argument. And the village of Westmont cites to Alvarez v. Peppis for the proposition that ordinances are not taxes. Well, in Peppis, the ordinance was just a general ordinance allowing the village to recover fees for after they develop property and somebody subsequently comes in and buys property along that development, the village gets to impose fees. And that was just generally attacked on the municipality's right to recover these sort of fees, which we don't attack. But within that opinion, there's the Raintree Homes, which Justice Hudson named, and there the ordinance was, again, just a general ordinance about the type of things needed if you're going to improve a roadway. You need to have curbs and tree lines, things like that. And they held there that the challenge was based on a five-year. Yes, they did, but they didn't take up the accrual issue. Well, here's what I want you to clarify for me, the difference between Sundance and Raintree. Unless I'm misreading this, in Sundance Home, this Eleanor Supreme Court held the cause of action accrued when the impact fee was paid. Yes. Nothing's been paid in this case, has it? No. Okay, so isn't that a distinction? No. That's disappointing. No, respectfully, I would say the distinction between Sundance Homes and Raintree. First of all, Sundance Homes, as I said, had before it the issue of the accrual of a cause of action challenging the imposition of impact fees. Yes. And as you just pointed out, it held the cause of action accrues when the fees are paid. Raintree Homes had before it an ordinance that simply said if you're going to build property along land that the village has previously improved with roadways and other things, you're going to have to pay the corresponding costs for those improvements. And within Raintree Homes, the court cited, I'm sorry, within Alvarez, which is the case that the village of Westmont cited, they did cite to Raintree Homes. And in Raintree Homes, they make the statement, the Supreme Court makes the statement that we have previously held that the imposition of impact fees are part of the taxing authority. The taxing authority of municipalities. And they said that has been true since the enactment or since the adoption of the Illinois Constitution of 1971. So can you reconcile Raintree and Sundance? They're not addressing the same issue. They're really not addressing the same issue. One, very precisely, is addressing when a cause of action challenging the imposition of fees accrues. The other, more generally, was having to do with the municipality's right to seek these fees in the first place. And there really is no distinction, to draw it closer to this case, between the imposition of impact fees and fees sought, like here, either under a recapture agreement or under a special assessment. These aren't impact fees, though. They're not impact fees. But I would say there's absolutely no distinction, at least none that have any bearing on what cause of action would accrue between impact fees and recapture fees or special assessment fees. And that's really what we're dealing with here, which is a special assessment. The trial court should have recognized that the ordinance before him, limited as he was to the record before him in the plain language of that ordinance, should have recognized that that ordinance was invalid on its face, which he kind of did because he said, I think this agreement is superfluous. But then he, for the very first time, went forward to say, but I do think that the municipalities, in some unspecified way, have the authority to seek these fees. He didn't have the discretion to take that further step. Because this ordinance was void of an issue, he should have said, I find this agreement of this ordinance to be based on an invalid agreement. And that should have been the end of it. So why doesn't it run analogous to Raintree again? And didn't the court in Raintree Homes hold that a challenge to the constitutionality of an ordinance and claims based upon an alleged abuse of governmental authority, and that's what you've alleged, are based on a five-year catch-all statute of limitations found in Section 13-204. Isn't that what Raintree Homes? It holds that. It does. Because it's damage to property, they're saying. And that's what brings it in front of them, that five-year limitations period. Okay? Okay. Well, we are saying, okay, fine, let's move, let's work with that five-year statute. When did the cause of action accrue? It hasn't accrued yet. And we don't have to have made the payment. It is when the payment would become due or when the payment is made. And he presented an argument to the trial court. Yes. In his ruling, went off the tracks where? When he said, I don't buy it. When he said to us, I said, you know, you don't want to argue with the trial court after he's ruled. He ruled. And then I said, Judge, what about the accrual issue? And he said, well, I think you're trying to convince me on the accrual issue by invoking a bunch of tax cases, and I just don't buy it. Well, the Illinois Supreme Court had just used those analogies to decide that the very issue. Well, if it hasn't accrued yet, what are we doing here? Why are we here? Because if it hasn't accrued yet, isn't it premature? No. It's not even ripe for. . . It is ripe under the Declaratory Judgment Act because we do have standing, as you said, because we are being harmed to this day. This lien keeps this property from being marketed at all. So my clients are paying the property taxes and will continue to do so with no way to get out from underneath it. So we do have standing. We do have standing under the Declaratory Judgment Act to bring this cause of action, and Westmont never challenged that. Are you alleging then that the father never knew about this when he owned the home? Yes. He received a letter from the village in November of 2010 saying, we're going to start this public improvement, and it's going to last through the spring of 2011, and no property owner will be assessed any sort of fees for this public improvement. That's what the father knew. There was no notice given to him. That's alleged in the complaint, which has to be taken as true at this point. You have some procedural due process arguments, but you never raised those in your complaint. I did. Paragraph 19, we raise all these things. We also make the allegation that no notice was given, and that is a procedural problem. Paragraph 19 in your brief here? No, in the complaint. In the complaint. Yeah. Did we raise it below? I'm sorry to interrupt. That's on you. Yeah. Did we raise it below? Yes. In Paragraph 19, we talk about all the procedural constitutional problems that were raised, and also we allege— Don't you raise it in response to the defendants' brief? Yes, we do. But I'm just saying originally, it has been part of this case from its inception, as has the fact that no notice was given. Let me finish your thought. Go ahead. Okay. The trial court—well, I'll just sum up. The trial court really had no discretion to go beyond the determination that it was an invalid agreement, and because that ordinance was based exclusively on that agreement, he should have dismissed it ultimately, but certainly shouldn't have perfunctorily dismissed the complaint. The statute of limitations, I understand the tension between the five- and ten-year period, but to me, the larger point to consider under that is when the cause of action approves, and it simply hasn't. So no, it cannot be considered a time bomb. You know, I do have one question. It's not determinative, but it is—just as a practical matter, I noticed from a Google map that the 22 East 56th Place is directly across the street from the 25 Hidden View Drive. Pretty much, yes. Basically. So as a practical matter, what is the village to do? Is it to allow the street to be paved half, halfway, halfway across, and then so the 25 Hidden View side would just be gravel, and the 22 East 56th Place would be paved in half curb and gutter? Absolutely not. But what they could have done is enter into a recapture agreement with American Charter Bank, and American Charter Bank paid whatever proportion they agreed to, which, by the way, they did. And then they would have had a valid agreement to look to my clients when the time came when they applied for a plan of subdivision. But they didn't do that. And what the trial court, and respectfully this court, has to deal with is the record before it, the plain language of the ordinance based exclusively on a recapture agreement that doesn't exist. So the village, you're saying, could have waited until a later time when your clients wanted to subdivide to do a recapture? I think no. I think they would have had to have a recapture agreement with American Charter Bank back then because that's what their local ordinance said, cited in our brief, say that you have to look to the developer to pay it in its entirety. But they're not the developer. American Charter Bank is a developer. Well, they took over after the developer. They voluntarily did. And if they want to do that, which was their right to do, they being Westmont, if Westmont wanted to take it upon itself to do these improvements and they wanted to tag my clients with a portion of the cost, then they would have had to go through the procedure of assessing or of imposing a special assessment. And that has quite a bit more procedural and notice requirements than anything else. And it is definitely applicable to this situation through the Notice Act. Thank you, Mr. Moore.  Thank you. Mr. Zemanek, on behalf of the appellant. Good morning. Good morning, please, Court. I think the first issue is under our motion to dismiss, presumed at 2-615, which the trial court granted, whether the village of Westmont or the home-grown municipality had the authority to complete certain public improvements and recapture a portion of those costs from property across the street that benefited from those public improvements. Let me just cut you off and ask you, why is Mr. Moore incorrect in saying that this recapture agreement should have been between the municipality and the bank versus between the municipality and his client? So he is right in that traditionally a recapture agreement is in fact an agreement. It's between a developer and a municipality. And the case law is clear that if a developer oversizes public improvements or extends public improvements, they can recapture the costs pursuant to a lien that they record against the benefited property. In this case, the village stepped into the shoes of the defaulted developer and decided to do this certain public improvement itself to benefit the property where the developer had defaulted and recapture a portion of those costs from the property across the street. So I think the question would be, does the village as a home-grown municipality have the authority to recapture public improvement costs that it has installed? So in other words, Mr. Moore may be correct to the extent that traditionally it would have been done through the developer or the bank that stepped into the shoes, but really the issue at hand is now whether or not the village has the legal authority to do that or are they precluded? Absolutely. And I believe there are several ways a municipality can recapture costs from public improvements. One way is through imposing a special service area. That's one statutory mechanism. Or special assessments against a property. Or pursuant to contract through an annexation agreement. Or they can recapture the costs by performing the work itself  And there's a case that says a municipality, first of all, it says recapture agreements and these liens are a proper exercise of a village's police powers. They're rational. They serve a public purpose because they facilitate future development of the benefited property. And as a home-grown community, it's within their authority to do so. And the specific case of beneficial, I'm sorry, I have the wrong case, the Chicago title versus the village of Bolingbroke, that's exactly what Bolingbroke did. It installed public improvements and it required a benefited property upon subdivision to pay the recapture costs pursuant to a lien that was, actually they didn't have a lien there, they just had an ordinance that said benefited properties upon subdivision have to pay recapture costs when the village has installed the public improvements. At what point did they say that, though, in Chicago title? Because here, at what point was the father who owned the property prior to the son and the daughter taking over the trust, when was he advised? He wasn't. He was never advised that this was going to be the case. He was advised when the village passed an ordinance in open session and reported a lien against his property. Just like in the Chicago title case, they did not reach out to a specific property owner who benefited and said, we're going to report a lien against your property. They just passed an ordinance and said, whoever subdivides in our community, if there are public improvements that we've installed that benefit your property so you don't have to do them, we're going to recoup a portion of those costs. Can you focus in and answer and address this specific essential point that which statute of limitations applies is dependent upon when the cause of action approves? Certainly. What is your reaction to that point? My reaction is that a recapture, this recapture lien is different than an impact fee. So the impact fee cases, a municipality passes an ordinance of general applicability to all developers that may come in and apply for a building permit, and those ordinances say we've done public improvements throughout our community, whether it's streets, parks, whatever, and your development is going to cause wear and tear on these public improvements. So whenever you come in for a building permit, you have to pay an impact fee. That's reported against title to a property. Here we have a lien reported against title to the property. The plaintiff alleges that lien is causing damage to his property. This claim is a claim for damage to property. So in that case, the courts are clear that a damage to property case is governed by the five-year catch-all statute of limitations. Moreover, I think there's a distinction between the impact fees and a recapture lien in that the Sundance Home equated impact fees more to a tax. Never said that they are a lien. They were never reported against title to the property. This is a lien that was reported against title to the property. If it's plaintiff's argument that, and I think Justice Spence, you hit the nail on the head, if it's plaintiff's argument that our cause of action hasn't even approved yet because we haven't paid the recapture fees, then this case isn't even right. In the impact fee cases, you'll note if you read the facts of those cases, the developers all paid the fees under protest as a condition to them filing a lawsuit because they were challenging the fee as applied. And in this case, if he's making a general constitutional argument that this lien is somehow unconstitutional or beyond the authority of the village, then case law is also clear that such a challenge is governed by the catch-all five-year statute of limitations. If the five-year statute of limitations applies, the cause of action is violent? Correct. That's how the trial court ruled.  No. All right. Thank you. Thank you. Mr. Mitchell, can you address the Court in rebuttal? Yeah. We are not saying that the five-year versus the ten-year limitation period is premised on approval. That is an issue under any limitations period, and the limitations period doesn't begin to run until the cause of action has approved. Aren't you alleging that you already have damages as a result? Yes, we are. We are saying that because this came to our, which is alleged in the complaint, this came to our attention when my client tried to market the property, had a buyer, and they first discovered this lien. What are your damages at this point? Under the declaratory judgment action, we do have a case of controversy in that they have done something which we say is unconstitutional, unfair, or anything else you want to call it, which is keeping us from. . . You're saying that this has rendered the property unmarketable. Yes. That's the damages right there. Yeah. And Bolingbroke, as everyone said, didn't involve a recapture agreement. Bolingbroke is a case they cite for the proposition that it's okay for a municipality to pay itself back, but it did not involve a recapture agreement. And yet they have, Westland has, relied entirely on recapture agreement principles to defend this ordinance. Well, you know, they do have to defend the ordinance as it is. And what it is is an ordinance that is based, as I've said before, exclusively on a recapture agreement that doesn't exist. It was void of an issue. The trial court should have recognized that and gone no further. I would say that this case is not, or this claim is not time barred because the cause of action has yet to approve, so the limitations period could not have run. And yet we do have standing under the Predatory Judgment Act, which we allege in this complaint that we did have a case in controversy. And I was just looking while I was sitting there to see how Westland answered that particular paragraph. But what I do know is they never quarreled with standing for whether or not this is right. Thank you very much. Thank you. On behalf of the panel, I'd like to commend both attorneys for the quality of their arguments in this case. This matter will, of course, be taken under advisement and a written decision will issue in due course.